IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Tobacco Tax

SCAPPOOSE SMOKE SHOP,      )
                          )
        Plaintiff,        )      TC-MD 120144C
                          )
    v.                    )
                          )
DEPARTMENT OF REVENUE,    )
State of Oregon,          )
                          )
        Defendant.        )      **DECISION**

Plaintiff appealed Defendant's assessment of tobacco taxes and penalties on certain

tobacco products for the 2011 tax year.  Defendant issued a Notice of Determination and

Assessment on January 25, 2012, reflecting a tax to pay of $1,533.67.  On January 30, 2012,

Defendant sent Plaintiff a Notice of Liability Balance reflecting the same amount of tax, plus a

penalty equal to 100 percent of the tax, for a total balance due of $3,067.34.

Trial on the matter was held in the Oregon Tax Court, Salem, Oregon, on November 5,

2012.  John Harper (Harper), owner, appeared and testified for Plaintiff.  Fred Nichol (Nichol),

Tax Auditor 2, appeared and testified for Defendant.  Plaintiff's exhibits 1-12.5 and Defendant's

exhibit A were admitted at trial.[1]

## I.  STATEMENT OF FACTS

Harper testified that he owns and operates several small tobacco stores and that he

transfers products between the different stores.  Harper asserts that his suppliers paid the taxes on

all of the tobacco products he sold.  For purposes of this case, the two primary entities are Under

---

[1] The court excluded Defendant's exhibit B because the documents within that exhibit related to prior tax years (2005 through 2007) and the court found them irrelevant to the year at issue.  Nichol's intent was to show the court that statements Nichol alleges Harper made during pretrial conferences regarding his years of compliance with tobacco tax laws were untrue, and that in fact Harper had tobacco tax "issues" with the Oregon Department of Revenue in the past.

the Bridge Cigarettes, located in Astoria, Oregon, and Scappoose Smoke Shop, located in Scappoose, Oregon.

The parties presented the following information and evidence. On October 6, 2011, Defendant sent inspectors, including Nichol, to Scappoose Smoke Shop for a routine inspection. (Compl at 2; Def's Ex A at 1.) Harper was present during the inspection. (*See* Ptf's Ex 2.) At the end of the inspection Harper was given a "Tobacco Inspection Report." (*Id.*) There was a check mark in the box next to the section of the report for "Other Tobacco Products" as well as a corresponding check mark in the box for "Invoice(s) Provided." (*Id.*) There was no check mark in the box for "Demand to Examine Issued." (*Id.*)

Following the October 2011 inspection, Defendant issued a letter to Plaintiff dated December 14, 2011, stating that for "[s]ome products, we have not been able to trace to purchase invoices[,]" and requested "copies of the invoices substantiating the purchase of these products." (Def's Ex A at 1.) Harper testified that Plaintiff did not receive Defendant's December 14, 2011, letter. Plaintiff did not respond "within twenty days of the date of [the] letter[,]" as requested by Defendant. (*Id.*) Defendant then issued a Notice of Determination and Assessment dated January 25, 2012, showing a total balance due of $1,533.67. (Compl at 9.) Defendant issued a Notice of Liability Balance dated January 30, 2012, assessing a 100 percent penalty of $1,533.67 on the tax owed for a total of $3,067.34. (*Id*. at 11.)

Harper testified that the tobacco products were purchased from distributors who had paid the required taxes, and that the products were then transferred between Harper's stores, typically from Astoria to Scappoose. In support of this testimony Harper presented sales invoices, product transfer lists, affidavits from employees attesting to transferring products between stores, and cancelled checks. (Ptf's Exs 4.1-11.6.) Harper testified that it was cheaper to buy in bulk for

one store and transfer the products than to buy in smaller quantities for each store individually. Harper also testified that in some instances the distributors would only allow for one shipping address on an account, necessitating the shipment of everything to one store.

The dispute involves Plaintiff's alleged failure to pay tobacco taxes on four tobacco products discovered during the inspection of Plaintiff's Scappoose store: Richwood Little Cigars (Richwood), Fantasia shisha (Fantasia), Starbuzz shisha (Starbuzz), and a small quantity (64) of various cigars. (Def's Ex A at 2-3.)

Plaintiff presented sales invoices from Universal Specialty Products showing the purchase of Richwood cigars. (Ptf's Exs 4.1-4.3.) These invoices all contain a "tax on item" column as well as a note stating "USP is responsible for the payment of OTP tax." (Ptf's Exs 4.1-4.3.) All of the invoices have "bill to" and "ship to" addresses of "Under the Bridge Cigarettes" in Astoria. While two invoices are dated May and September 2011, and a third is dated December 30, 2009. (Ptf's Ex 4.1.) Regarding the 2009 invoice, Harper testified that Universal Specialty Products had been considering not renewing its Oregon distributor's license and therefore, because Universal Specialty Products was Plaintiff's only supplier, Harper overstocked the items until a new supplier could be found. (*Id.*) Plaintiff also provided two notarized affidavits from employees that the Richwoods are "shipped to * * * Under the Bridge [Cigarettes]" and then "transferred to [Scappoose Smoke Shop]." (Ptf's Ex 9.1; *see also* Ptf's Ex 10.)

Plaintiff produced two sales invoices dated July and December 2010 from City Rose Trade LLC listing various flavors of Starbuzz shisha. (Ptf's Exs 11.1, 11.3.) The "Billing & Shipping To:" box lists "Under Bridge/ Scappoose Smoke shop." (*Id.*) The street address appearing on those invoices matches the street address for Under the Bridge Cigarettes.

(*Compare* Ptf's Exs 11.1, 11.3 *with* Def's Ex A at 9.) Additionally, Plaintiff attached copies of two cancelled checks drawn on the account of Scappoose Smoke Shop to the order of City Rose Trade LLC in amounts matching the totals on the sales invoices. (Ptf's Exs 11.2, 11.4.) "Sisha [*sic*]" is written in the "for" line on one of the checks; the other check lists an invoice number in the "for" line. (*Id.*) Plaintiff submitted two affidavits regarding the purchase of shisha products by Plaintiff. One affidavit states that the shisha is a "transfer item[] at times," but has also been picked up in person "on several occasions." (Ptf's Ex 9.1.) The other affidavit indicates that the shisha products were on occasion transferred from Plaintiff to Under the Bridge Cigarettes. (Ptf's Ex 10.)

There were no dates on Plaintiff's handwritten lists, and the date on one of the transfer sheets was past the date of the inspection. (*See* Ptf's Exs 5.1, 6.1, 7.1-7.6, 8.1)

Harper testified about Richwood cigars, Starbuzz shisha, and Fantasia shisha. Plaintiff did not submit any exhibits regarding the sale of the 64 cigars, and Harper did not testify regarding their source. Plaintiff did not present any evidence regarding the source of the Fantasia shisha.

## II. ANALYSIS

Plaintiff appeals Defendant's Notice of Determination and Assessment dated January 25, 2012, and Notice of Liability Balance dated January 30, 2012, imposing a tax and penalty for tax year 2011. The issue before the court is whether Plaintiff sold untaxed tobacco products, thereby rendering itself subject to the tax imposed on tobacco distributors. As the party seeking affirmative relief, Plaintiff bears the burden of proving by a preponderance of the evidence that the tax on its tobacco merchandise was paid. *See* ORS 305.427.

/ / /

A.      *Tobacco products tax*

Oregon imposes a tax "upon the distribution of all tobacco products in this state." ORS 323.505(1).[2] The tax, while "intended to be a direct tax on the consumer," is imposed on the "distributor at the time the distributor distributes tobacco products." (*Id.*)

Under Oregon law, the term "distributor" includes not only persons who import tobacco products into the state for sale, but also "[a]ny person, including a retail dealer, who sells untaxed tobacco products in this state[.]" ORS 323.500(7)(a), (d). A "retail dealer" is defined by statute as "any person who is engaged in the business of selling or otherwise dispensing tobacco products to consumers." ORS 323.500(11).

Retail dealers are required to maintain records sufficient to prove that the tax has been paid on all tobacco products that they offer for sale. ORS 323.540(1). Statutorily mandated record requirements include the retention of invoices specifying: the names and addresses of the seller and purchaser, "the date of the sale of tobacco products, the quantity and product description of tobacco products, the price paid for tobacco products and any discount applied in determining the price paid for tobacco products[.]" ORS 323.538(1)(a). A wholesale "purchaser in possession of tobacco products who is unable to present a sales invoice * * * is presumed to be in possession of tobacco products for which the tax * * * has not been paid." ORS 323.538(4)(a). Therefore, a retail dealer is statutorily presumed to be a "distributor," and thus liable to pay tobacco tax, unless it is able to produce the wholesale sales invoices for all tobacco products that it sells. *See id.*; ORS 323.500(7)(d); ORS 323.505(1).

In addition to being subject to tax, wholesale purchasers in possession of untaxed tobacco products are subject to one or more penalties. Such purchasers are immediately subject to a

---

[2] All references to the Oregon Revised Statutes (ORS) are to 2009 unless otherwise indicated.

penalty of 100 percent of the tax due. ORS 323.538(4)(b). In addition, if such a purchaser is a retail dealer, the Department of Revenue is authorized to impose a civil penalty not exceeding $1,000. ORS 323.538(4)(c).

Here, Plaintiff sells tobacco products and is therefore a retail dealer of tobacco. ORS 323.500(11). If Plaintiff sold tobacco products for which no distributor had paid the tax, then Plaintiff is considered a distributor and is immediately subject to the tax, plus a penalty of 100 percent. ORS 323.500(7)(d); ORS 323.505; ORS 323.538(4)(b).

The scope of the court's inquiry is limited to whether Plaintiff has shown that tax was paid on the Richwood cigars and the Starbuzz shisha. Plaintiff presented no evidence or testimony regarding the sale of the other 64 cigars. Plaintiff 's evidence regarding the Fantasia shisha consisted of emails, handwritten lists without dates, and a transfer sheet with a date after the inspection date. The court gives these exhibits very little weight as to the issue of whether the Fantasia shisha products found during the inspection had been purchased from a source that had paid the required taxes.

With regard to the two remaining tobacco products, Richwood cigars and Starbuzz shisha, Plaintiff presented evidence that such products have been purchased by Under the Bridge Cigarettes in Astoria and transferred between Astoria and Scappoose. That evidence includes invoices listing Under the Bridge Cigarettes as the buyer, notarized affidavits from employees of the two stores attesting to a practice of transferring the products between the stores, and transfer forms for internal use in transferring the products. In the case of the Starbuzz shisha, Plaintiff also provided two cancelled checks drawn upon its account and payable to the issuer of two invoices in amounts corresponding to those two invoices.

/ / /

However, while Plaintiff's evidence tends to show a general practice of transferring inventory between stores, it is insufficient to show that the tax has been paid on the particular products found by the auditor within the Scappoose premises. Some of the invoices provided are old; a Richwood cigars invoice is dated December 30, 2009, almost two years before the inspection, and both Starbuzz shisha invoices date to 2010. The Richwood invoices do not indicate that the tax has been paid. No testimony was offered from the wholesale distributor regarding whether the tax had been paid on the Richwoods, or who affixed the stamp stating that the tax had been paid on a purchase of Starbuzz. The faxed transfer requests are undated, and one of the transfer forms is dated after the inspection date. Evidence was not offered to identify the products found in the store as the ones listed on the invoices.

By failing the keep the required records in the store with its tobacco products, Plaintiff incurred the statutory presumption that those products were untaxed. To overcome that presumption, Plaintiff must show not just that it has purchased tax-paid tobacco products in the past, but that the very tobacco products in its store are tax-paid. Plaintiff's evidence is not specific enough to meet that burden.

Because a purchaser of untaxed tobacco products is liable to a 100 percent penalty under ORS 323.538(4)(b), Defendant acted appropriately in assessing this penalty.

## III. CONCLUSION

After carefully considering the evidence and testimony before it, the court finds that Plaintiff has not shown by a preponderance of the evidence that tax was paid on the products identified by Defendant in its store. Now, therefore,

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied and the tax and penalty Defendant imposed is upheld.

Dated this ____ day of January 2013.


_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Dan Robinson on January 16, 2013. The Court filed and entered this Decision on January 16, 2013.*